**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | |
| UNITED PARKS & RESORTS INC.; ) | **DEMAND FOR A JURY TRIAL** |
| SEAWORLD PARKS & ) | |
| ENTERTAINMENT, INC.; ) | |
| SEAWORLD PARKS & ) | |
| ENTERTAINMENT LLC (D/B/A ) | |
| BUSCH GARDENS TAMPA); SEA ) | |
| WORLD OF FLORIDA LLC (D/B/A ) | |
| SEA WORLD ORLANDO, ) | |
| DISCOVERY COVE, AND ) | |
| AQUATICA); AND SEA WORLD LLC ) | |
| (D/B/A SEAWORLD PARKS & ) | |
| RESORTS ORLANDO), ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**COMPLAINT**

1.    Plaintiff United States of America brings this action against Defendants United Parks & Resorts Inc., SeaWorld Parks & Entertainment, Inc., SeaWorld Parks & Entertainment LLC, Sea World of Florida LLC, and Sea World LLC, d/b/a the brand names SeaWorld, Busch Gardens, Discovery Cove, Sesame Place, Water Country USA, Adventure Island, and Aquatica (collectively, "UPR" or "Defendants"), to enforce Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181–89, and its implementing regulation, 28 C.F.R. Part 36.

2.      In passing the ADA, Congress found that "individuals with disabilities continually encounter various forms of discrimination, including . . . overprotective rules and policies [and] . . . exclusionary qualification standards and criteria." 42 U.S.C. § 12101(a)(5).  Congress further found that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals." 42 U.S.C. § 12101(a)(7).  The ADA's prohibition against discrimination includes providing access to parks, zoos, amusement parks, and other places of recreation, such as those operated by UPR, 42 U.S.C. § 12181(7)(I), and is essential to furthering the ADA's purpose "to invoke the sweep of congressional authority . . . to address the major areas of discrimination faced day-to-day by people with disabilities." 42 U.S.C. § 12101(b)(4).

3.      The ADA prohibits public accommodations from discriminating against individuals on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations the public accommodation provides.  42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a).

4.      UPR is a global theme park and entertainment company that owns, leases, leases to, or operates twelve parks and experiences in the United States under the brands SeaWorld, Busch Gardens, Discovery Cove, Sesame Place, Aquatica, Adventure Island, and Water Country USA.

5.      UPR is a public accommodation and operates places of public accommodation within the meaning of the ADA because it is a private entity, the

operations of which affect commerce, that owns, leases, leases to, or operates a park, zoo, amusement park, or other place of recreation.  42 U.S.C. §§ 12181(1), (6) and (7)(I); § 12182; 28 C.F.R. § 36.104.

6.    As a public accommodation, UPR is prohibited from subjecting individuals, on the basis of disability, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity to participate in or benefit from UPR's goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b)(1)(A)(i); 28 C.F.R. § 36.202(a).

7.    As a public accommodation, UPR must permit individuals with mobility disabilities to use wheelchairs and manually powered mobility aids, including walkers, crutches, canes, braces, or other similar devices designed for use by individuals with mobility disabilities in any areas open to pedestrian use.  42 U.S.C. § 12182; 28 C.F.R. § 36.311(a).

8.    As a public accommodation, UPR is also prohibited from discriminating, on the basis of disability, against individuals through the imposition or application of eligibility criteria that screen out individuals with disabilities from fully and equally enjoying any of its goods, services, facilities, privileges, advantages, or accommodations, unless UPR can show such criteria to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations UPR offers.  42 U.S.C. § 12182(b)(2)(A)(i); 28 C.F.R. § 36.301(a).  UPR may impose legitimate safety requirements that are necessary for safe operation, but those requirements must be based on actual risks and not on mere speculation, stereotypes,

or generalizations about individuals with disabilities.  28 C.F.R. § 36.301(b).

9.    The ADA further prohibits UPR, as a public accommodation, from imposing a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids, barrier removal, alternatives to barrier removal, and reasonable modifications in policies, practices, or procedures, that are required to provide that individual or group with the nondiscriminatory treatment required by the ADA. 42 U.S.C. § 12182(b)(2)(A)(i); 28 C.F.R. § 36.301(c).

10.    As a public accommodation, UPR is prohibited from discriminating against individuals with disabilities through a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford UPR's goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless UPR can demonstrate that making such modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations UPR provides. 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a).

11.    Since November 2025, UPR has violated and continues to violate the ADA by:

   a. Implementing and enforcing a policy prohibiting the use of wheeled walkers with seats by guests with disabilities who attend its parks and experiences.  42 U.S.C. § 12182; 28 C.F.R. § 36.201(a);

   b. Denying individuals with disabilities, and those associated with them, the

4

opportunity to participate in or benefit from UPR's goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. §§ 12182(b)(1)(A)(i) and 12182(b)(1)(E); 28 C.F.R. §§ 36.202(a) and 36.205;

c. Refusing to permit individuals with disabilities, and those associated with them, from using manually powered mobility aids, specifically wheeled walkers with seats, in areas open to pedestrian use. 42 U.S.C. §§ 12182 and 12182(b)(1)(E); 28 C.F.R. §§ 36.311(a) and 36.205;

d. Imposing or applying eligibility criteria that screen out individuals with disabilities who use wheeled walkers with seats, and those associated with them, from fully and equally enjoying UPR's goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. §§ 12182(b)(2)(A)(i) and 12182(b)(1)(E); 28 C.F.R. §§ 36.301(a) and 36.205;

e. Imposing surcharges on guests with disabilities who use wheeled walkers with seats, and those associated with them, to cover the costs of measures that are required to provide them with nondiscriminatory treatment. 42 U.S.C. §§ 12182(b)(2)(A)(i) and 12182(b)(1)(E); 28 C.F.R. §§ 36.301(c) and 36.205; and

f. Failing to make reasonable modifications in its policies, practices, or procedures, when such modifications are necessary to afford UPR's goods, services, facilities, privileges, advantages, or accommodations to

individuals with disabilities who use wheeled walkers with seats and those associated with them. 42 U.S.C. §§ 12182(b)(2)(A)(ii) and 12182(b)(1)(E); 28 C.F.R. §§ 36.302(a) and 36.205.

12. The United States brings this action because it has reasonable cause to believe UPR is engaged in a pattern or practice of discrimination against people with disabilities. 42 U.S.C. § 12188(b)(1)(B)(i).

13. The United States also brings this action because it has reasonable cause to believe a person or group of persons has been discriminated against by UPR, and that discrimination raises an issue of general public importance. 42 U.S.C. § 12188(b)(1)(B)(ii).

14. To redress violations of the ADA by UPR, the harm UPR has caused, and to prevent UPR from continuing to discriminate against people with disabilities, the United States seeks declaratory and injunctive relief, monetary damages, a civil penalty, and any other relief the interests of justice may require.

**JURISDICTION AND VENUE**

15. The Court has jurisdiction over this action under the ADA, 42 U.S.C. § 12188(b)(1)(B), and 28 U.S.C. §§ 1331 and 1345, because it involves claims arising under federal law and is commenced by the United States.

16. The Court may grant declaratory relief and other further necessary or proper relief pursuant to 28 U.S.C. §§ 2201 and 2202, and may grant equitable relief, monetary damages, and a civil penalty pursuant to 42 U.S.C. § 12188(b)(2).

17. Venue is proper in the Orlando Division of the Middle District of Florida

under 28 U.S.C. § 1391 because Defendants are headquartered, conduct business, and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## PARTIES

18.    Plaintiff is the United States of America.

19.    Defendant is United Parks & Resorts Inc., a Delaware corporation with its principal place of business at 6240 Sea Harbor Drive, Orlando, Florida 32821. UPR, previously SeaWorld Entertainment, Inc., through its wholly owned subsidiary SeaWorld Parks & Entertainment, Inc., owns, leases, leases to, or operates twelve theme parks within the United States under the brand names SeaWorld, Busch Gardens, Discovery Cove, Sesame Place, Aquatica, Adventure Island, and Water Country USA.  Five of UPR's parks and experiences are located in this district.  UPR also does business as Defendants SeaWorld Parks & Entertainment LLC (which owns, leases, leases to, or operates Busch Gardens Tampa), Sea World of Florida LLC (which owns, leases, leases to, or operates Sea World Orlando, Discovery Cove, and Aquatica), and Sea World LLC (which owns, leases, leases to, or operates SeaWorld Parks & Resorts Orlando).

20.    UPR is a public accommodation because it is a private entity, the operations of which affect commerce, that owns, leases, leases to, or operates places of public accommodation, including parks, zoos, amusement parks, or other places of recreation.  42 U.S.C. § 12181(7)(I); 28 C.F.R. § 36.104.

**FACTUAL ALLEGATIONS**

21.     Upon information and belief, between 1992, when Title III of the ADA became effective, and the end of October 2025, all UPR parks permitted guests with mobility disabilities who entered to use wheeled walkers with seats in pedestrian areas within UPR's parks.

22.     Upon information and belief, in November 2025, UPR adopted, implemented, and enforced a policy prohibiting guests with disabilities who entered several of its parks from using wheeled walkers with seats ("Wheeled Walker Ban").

23.     In November 2025, at least three UPR parks—SeaWorld Orlando, Busch Gardens Tampa Bay, and Aquatica Orlando—posted their Wheeled Walker Bans on the "Accessibility" pages of their respective websites.

24.     In November 2025, SeaWorld Orlando updated the "Accessibility" page of its website to inform guests of its Wheeled Walker Ban. SeaWorld Orlando explained, "For the safety of our guests and employees, rollator walkers with seats on them are not permitted at SeaWorld Orlando. Alternative personal transportation options, including standard wheelchairs and Electric Convenience Vehicles (ECVs), are available. Walkers without a seat are permitted."[1]

---

[1] *Accessibility*, SeaWorld Orlando, https://seaworld.com/orlando/help/guests-with-disabilities/ (accessed Nov. 24, 2025) (under "General Information" -> "Rollator Walkers") [https://perma.cc/62D3-WERZ].



25. Upon information and belief, although SeaWorld Orlando's Wheeled Walker Ban originally referred only to "Rollator Walkers," SeaWorld Orlando has, at all relevant times, enforced this policy against all wheeled walkers with seats.

26. At the time SeaWorld Orlando originally updated its website to include information regarding its Wheeled Walker Ban, it stated that "[a]lternative personal transportation options, including standard wheelchairs and [ECVs], [were] available." According to SeaWorld Orlando's website at that time, those "[a]lternative personal transportation options" were available for rent at prices starting at $40.00 for wheelchairs and $110.00 for ECVs.[2]

27. In November 2025, Busch Gardens Tampa Bay updated the "Accessibility" page of its website to inform guests of its Wheeled Walker Ban. The park explained, "Busch Gardens Tampa Bay is committed to providing guests with a

---

[2] *Upgrades & Add-ons*, SeaWorld Orlando, https://seaworld.com/orlando/upgrades/ (accessed Nov. 24, 2025) (under "Rentals") [https://perma.cc/M3SN-NVAY].

safe and enjoyable experience. Because of different pathway configurations, [*sic*] terrain, rollator walkers with seats of [*sic*] them are not permitted. Alternative forms of personal transportation, including standard wheelchairs and [ECVs], are available. Walkers without a seat are permitted."[3]



28.    Upon information and belief, although Busch Gardens Tampa Bay's Wheeled Walker Ban referred to "rollator walkers with seats," Busch Gardens Tampa Bay has, at all relevant times, enforced this policy against all wheeled walkers with seats.

29.    At the time Busch Gardens Tampa Bay updated its website to include information regarding its Wheeled Walker Ban, it stated that "[a]lternative forms of personal transportation, including standard wheelchairs and [ECVs], [were] available." According to Busch Gardens Tampa Bay's website, those "[a]lternative

---

[3] *Accessibility*, Busch Gardens Tampa Bay, https://buschgardens.com/tampa/park-info/accessibility-guide/ (accessed Nov. 24, 2025) (under "General Information" -> "Are rollator or wheeled walkers allowed?") [https://perma.cc/RX8W-AA3G].

forms of personal transportation" were available for rent at prices starting at $37.00 for wheelchairs and $115.00 for ECVs.[4]

30.    Upon information and belief, in November 2025, Aquatica Orlando updated the "Accessibility" page of its website to inform guests of its Wheeled Walker Ban.  The park explained, "Aquatica Orlando is committed to providing guests with a safe and enjoyable experience. Because of different pathway configurations, [*sic*] terrain, rollator walkers with seats of [*sic*] them are not permitted.  Alternative forms of personal transportation, including standard wheelchairs and [ECVs], are available.  Walkers without a seat are permitted."

31.    Upon information and belief, although Aquatica Orlando's Wheeled Walker Ban originally referred only to "rollator walkers with seats," Aquatica Orlando enforced this policy against all wheeled walkers with seats.

32.    At the time Aquatica Orlando originally updated its website to include information regarding its Wheeled Walker Ban, it stated that "[a]lternative forms of personal transportation, including standard wheelchairs and [ECVs], [were] available." According to Aquatica Orlando's website, those "[a]lternative forms of personal transportation" were available for rent at prices starting at $40.00 for wheelchairs and $110.00 for ECVs.[5]

33.    In November 2025, the U.S. Department of Justice's Civil Rights

---

[4] *Upgrades & Add-ons*, Busch Gardens Tampa Bay, https://buschgardens.com/tampa/upgrades/ (accessed Jan. 6, 2026) (under "Rentals") [https://perma.cc/QK89-YPGJ].
[5] *Upgrades & Add-ons*, Aquatica Orlando, https://aquatica.com/orlando/upgrades/ (accessed Jan. 6, 2026) (under "Rentals") [https://perma.cc/VQ5A-5UHJ].

Division began receiving numerous complaints from individuals with disabilities about UPR's Wheeled Walker Ban.

34.    On November 25, 2025, the U.S. Department of Justice's Civil Rights Division and the U.S. Attorney's Office for the Middle District of Florida (collectively, "the Department") notified UPR of its investigation.[6]

35.    In November or December 2025, Discovery Cove Orlando updated the "Accessibility" page of its website to inform guests of its Wheeled Walker Ban.[7]

36.    In December 2025, SeaWorld Orlando and Aquatica Orlando updated, and Discovery Cove Orlando either updated or posted, their Wheeled Walker Bans on their respective websites. On the "Accessibility" pages of each website, SeaWorld Orlando, Aquatica Orlando, and Discovery Cove Orlando explained, in part, "Rollators with seats can pose a safety concern when not used properly, particularly when someone is seated and the device is pushed by another person. Despite reminders and previous steps, including requiring signed waivers, we continued to see misuse and safety-related incidents. For these reasons, rollators with seats are not permitted. For purposes of this policy, the term 'rollator' also includes wheeled walkers with seats . . .. In addition to permitting personal rollators without seats, we provide complimentary rollators (without seats) for guests who arrive with a device that does

---

[6] *Justice Department Opens Investigation into SeaWorld Orlando, Busch Gardens Tampa Bay, and Aquatica Orlando for Disability Discrimination*, U.S. Dep't of Justice, (Nov. 25, 2025), https://www.justice.gov/opa/pr/justice-department-opens-investigation-seaworld-orlando-busch-gardens-tampa-bay-and-aquatica.
[7] *Accessibility*, Discovery Cove Orlando, https://discoverycove.com/orlando/help/guests-with-disabilities/ (accessed Dec. 19, 2025) (under "General Information" -> "Rollators") [https://perma.cc/5BNC-PLRT].

not meet this policy . . .. A complimentary wheelchair is also available for guests who prefer that option. Seating is available throughout the park, and we updated and refreshed seating in many areas this year. Guests arriving with a device that is not permitted under this policy can stop by security screening, where an Ambassador will be happy to help. The device will be checked and held in a secure location while they use a complimentary park-provided rollator or wheelchair."[8]



---

[8] *Accessibility*, SeaWorld Orlando, https://seaworld.com/orlando/help/guests-with-disabilities/ (accessed Jan. 6, 2026) (under "General Information" -> "Rollators") [https://perma.cc/N999-GFYP]. *See also Accessibility*, Aquatica Orlando, https://aquatica.com/orlando/help/guests-with-disabilities/ (accessed Jan. 6, 2026) (under "General Information" -> "Rollators") [https://perma.cc/PN7C-Q8NG]; *Accessibility*, Discovery Cove Orlando, https://discoverycove.com/orlando/help/guests-with-disabilities/ (accessed Jan. 6, 2026) (under "General Information" -> "Rollators") [https://perma.cc/R63X-KUZD].

37.    SeaWorld Orlando, Aquatica Orlando, and Discovery Cove Orlando maintain their Wheeled Walker Bans with the explanation provided in paragraph 36 of this Complaint. Upon information and belief, Busch Gardens Tampa Bay removed its Wheeled Walker Ban from its website on or about March 19, 2026.

38.    Since notifying UPR of its investigation, the Department has received and continues to receive numerous complaints from individuals about the Wheeled Walker Ban at UPR parks.

39.    For example, the mother of an eight-year-old child who uses a pediatric posterior walker selected by the child's medical team emailed SeaWorld Orlando's Accessibility Services to ask whether her child's device would be permitted in UPR parks, providing a picture of her child with the device.  SeaWorld Orlando's Guest Correspondence Team responded by clarifying that rollators with seats are not permitted and offered the child's mother as alternatives only adult-sized rollators without seats or wheelchairs, neither of which were medically appropriate for her child.



14

40.    Additionally, U.S. Department of Veterans Affairs physicians provided rollators with seats to two military veterans with mobility disabilities, who are or were annual passholders at UPR parks.  When the veterans and their respective families arrived at SeaWorld Orlando to visit in November 2025, UPR security personnel stopped both of them before arriving at the entrance and told them that they could not enter the park with their rollators due to UPR's Wheeled Walker Ban.  Security personnel informed both veterans and their families that the only alternatives available to them were wheelchairs or ECVs, both of which they would need to rent.  UPR provided one veteran with a wheelchair free of charge for that day but told him that he would need to rent an alternative if he returned.  UPR denied the veteran entrance to the park with his rollator, and so, instead, he had to use a wheelchair against his physician's medical guidance.  UPR did not offer the other veteran an alternative free of charge; he decided to return home rather than enter the park because it was infeasible for his wife to push him in a wheelchair.  He and his wife also decided not to renew their annual passes as a result of UPR's Wheeled Walker Ban.

41.    Another individual with mobility disabilities traveled with his family from Wisconsin to visit SeaWorld Orlando and Discovery Cove Orlando in late December 2025.  The complainant is tall and uses a rollator designed to accommodate his height.  When he arrived at SeaWorld Orlando, UPR personnel informed him that he could not enter the park with his rollator due to their Wheeled Walker Ban.  UPR personnel offered the complainant a wheeled walker without a seat, but it was not tall enough to accommodate his height.  SeaWorld Orlando did not have any wheelchairs

15

available when the complainant arrived, so UPR personnel told him he could rent an ECV for a charge.  The complainant ultimately used UPR's too-small-wheeled walker without a seat the first day and alternated between using UPR's walker and a wheelchair throughout his visits to SeaWorld Orlando and Discovery Cove Orlando over the rest of his multi-day trip, which deprived him of his ability to walk, required his family members to push him, caused him significant physical pain, and diminished his and his family's experiences at UPR parks.

42.    There are numerous other individuals with various mobility disabilities, or those associated with them, from across the United States who were discriminated against by UPR's Wheeled Walker Ban under the ADA.

## CAUSE OF ACTION: VIOLATIONS OF TITLE III OF THE ADA

### REFUSAL TO PERMIT MOBILITY DEVICES

43.    The United States realleges and incorporates by reference the allegations set forth in paragraphs 1 through 42.

44.    UPR discriminates against individuals with disabilities, and those associated with them, in violation of Title III of the ADA, 42 U.S.C. §§ 12181–89, and its implementing regulation, 28 C.F.R. Part 36, through UPR's policies and practices of refusing to permit individuals with mobility disabilities from using manually powered mobility aids, specifically wheeled walkers with seats, in any areas open to pedestrian use.  42 U.S.C. §§ 12182 and 12182(b)(1)(E); 28 C.F.R. §§ 36.201, 36.205, and 36.311(a).

45.    UPR discriminates against individuals, on the basis of disability, in the

full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations.  42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a).

46.    UPR denies individuals or groups of individuals, on the basis of disability, the opportunity to participate in or benefit from its goods, services, facilities, privileges, or accommodations.  42 U.S.C. § 12182(b)(1)(A)(i); 28 C.F.R. § 36.202.

47.    UPR's violations of the ADA amount to a pattern or practice of discrimination.  42 U.S.C. § 12188(b)(1)(B)(i).

48.    UPR's discrimination against individuals with disabilities under the ADA raises an issue of public importance.  42 U.S.C. § 12188(b)(1)(B)(ii).

49.    UPR's violations of the ADA have harmed and continue to harm individuals with disabilities, including those discussed in this Complaint and others similarly situated, who, because of UPR's discrimination, are entitled to monetary damages, including compensatory damages.  42 U.S.C. § 12188.

**APPLICATION OF DISCRIMINATORY ELIGIBILITY CRITERIA**

50.    The United States realleges and incorporates by reference the allegations set forth in the paragraphs 1 through 49.

51.    UPR discriminates against individuals with disabilities, and those associated with them, in violation of Title III of the ADA, 42 U.S.C. §§ 12181–89, and its implementing regulation, 28 C.F.R. Part 36, through UPR's policies and practices of imposing or applying eligibility criteria that screen out individuals with disabilities who use wheeled walkers with seats from fully and equally enjoying UPR's goods, services, facilities, privileges, advantages, or accommodations.

42 U.S.C. §§ 12182(b)(2)(A)(i) and 12182(b)(1)(E); 28 C.F.R. §§ 36.301(a) and 36.205.

52. UPR discriminates against individuals with disabilities, and those associated with them, in violation of Title III of the ADA, 42 U.S.C. §§ 12181-89, and its implementing regulation, 28 C.F.R. Part 36, through its policies and practices of imposing surcharges on guests with disabilities who use wheeled walkers with seats to cover the costs of measures that are required to provide them with nondiscriminatory treatment.  42 U.S.C. §§ 12182(b)(2)(A)(i) and 12182(b)(1)(E); 28 C.F.R. §§ 36.301(c) and 36.205.

53. UPR's violations of the ADA amount to a pattern or practice of discrimination.  42 U.S.C. § 12188(b)(1)(B)(i).

54. UPR's discrimination against individuals with disabilities under the ADA raises an issue of public importance.  42 U.S.C. § 12188(b)(1)(B)(ii).

55. UPR's violations of the ADA have harmed and continue to harm individuals with disabilities, including those discussed in this Complaint and others similarly situated, who, because of UPR's discrimination, are entitled to monetary damages, including compensatory damages.  42 U.S.C. § 12188.

## FAILURE TO MAKE REASONABLE MODIFICATIONS

56. The United States realleges and incorporates by reference the allegations set forth in the paragraphs 1 through 55.

57. UPR discriminates against individuals with disabilities, and those associated with them, in violation of Title III of the ADA, 42 U.S.C. §§ 12181–89, and its implementing regulation, 28 C.F.R. Part 36, through failing to make reasonable

modifications in its policies, practices, or procedures, when such modifications are necessary to afford UPR's goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities who use wheeled walkers with seats. 42 U.S.C. §§ 12182(b)(2)(A)(ii) and 12182(b)(1)(E); 28 C.F.R. §§ 36.302(a), 36.205.

58.    UPR's violations of the ADA amount to a pattern or practice of discrimination.  42 U.S.C. § 12188(b)(1)(B)(i).

59.    UPR's discrimination against individuals with disabilities under the ADA raises an issue of public importance.  42 U.S.C. § 12188(b)(1)(B)(ii).

60.    UPR's violations of the ADA have harmed and continue to harm individuals with disabilities, including those discussed in this Complaint and others similarly situated, who, because of UPR's discrimination, are entitled to monetary damages, including compensatory damages.  42 U.S.C. § 12188.

## **PRAYER FOR RELIEF**

The United States requests that the Court enter an Order:

(1)    Granting judgment for the United States and declaring that UPR violated Title III of the ADA, 42 U.S.C. §§ 12181–89, and its implementing regulation, 28 C.F.R. Part 36;

(2)    Enjoining UPR, its officers, agents, employees, and successors, and all other persons in active concert or participation with it, from discriminating against individuals with disabilities, and failing to comply with Title III of the ADA, 42 U.S.C. §§ 12181–89, and its implementing regulation, 28 C.F.R. Part 36;

(3)    Requiring UPR to modify its policies, practices, and procedures to

comply with Title III of the ADA, 42 U.S.C. §§ 12181–89, and its implementing regulation, 28 C.F.R. Part 36;

(4)    Requiring UPR to provide ADA training to its officers, agents, employees, and successors, and all other persons in active concert or participation with it, to a proficient level to meet ADA requirements;

(5)    Awarding monetary damages, including compensatory damages, to persons aggrieved by UPR's actions or failures to act, pursuant to Title III of the ADA, 42 U.S.C. §§ 12181–89, and its implementing regulation, 28 C.F.R. Part 36;

(6)    Assessing a civil penalty of $118,225 against UPR for a first violation of the ADA for public accommodations pursuant to 42 U.S.C. § 12188(b)(2)(C)(i), 28 C.F.R. § 36.504(a)(3), and 28 C.F.R. § 85.5 to vindicate the public interest; and

(7)    Ordering such other appropriate relief as the interests of justice may require.

Dated: March 26, 2026

Respectfully Submitted,

GREGORY W. KEHOE
United States Attorney
Middle District of Florida

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

R. JONAS A. GEISSLER
Deputy Assistant Attorney General

ROBERTA S. KIRKENDALL
Special Legal Counsel

*Alexandra N. Karahalios*

KEVIN J. KIJEWSKI
Deputy Chief

YOHANCE A. PETTIS
Deputy Chief, Civil Division
Florida Bar No. 021216
ALEXANDRA N. KARAHALIOS
Assistant United States Attorney
Florida Bar No. 1055229
400 N. Tampa Street, Suite 3200
Tampa, FL 33602
Phone: (813) 274-6000
Yohance.Pettis@usdoj.gov
Alexandra.Karahalios@usdoj.gov

DAVID K. GARDNER[9]
Trial Attorney
Disability Rights Section
Minnesota Bar No. 0402104
950 Pennsylvania Ave. NW – 4CON
Washington, DC 20530
Phone: (202) 598-1628
David.Gardner@usdoj.gov

---

[9] Pursuant to Local Rule 2.02(a), the United States of America hereby designates David K. Gardner as lead counsel in this matter.